UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

STEVEN W. CASKEY                                    CIVIL ACTION

VERSUS                                              NO. 3:18-Cv-694-JWD-RLB

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

**PLAINITFF'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff submits the following statements of material facts in support of his motion for summary judgment.

1. Plaintiff had worked for Occidental Petroleum Corporation as a shift supervisor before his medical condition caused him to take disability leave on October 22, 2014.

2. Plaintiff had worked for Oxychem for 22 years before he was forced to stop working due to hearing loss with ringing and chirping sounds in his ears. AR 1426-1427.

3. Caskey's medical records note the following:

- 9.20.12 – tinnitus; dizziness. Sensorineural hearing loss, asymmetrical - wear ear protection when around any excessive noise including lawn equipment, guns, motors, etc. AR 486-488.
- 10.14.14 – tinnitus started around 2010 after he had shingles. Constant chirping equally out of both ears. Lightheadedness. Gets about 2 to 3 hours of sleep each night. Feels like a zombie at work. Cannot complete sentences. AR 335.
- 5.25.15. – panic attacks two to three times since last visit. AR 516.
- 6.12.15 – chirping in both ears. AR 351-354. Discussed importance of ear protection in loud environments to prevent further hearing loss. Id.
- 6.19.15 – anxiety and depression. Continues to appear uncharged and more despondent. Problems with depression., anxiety, and problems with sleep, and general frustration with problems. AR 501.
- 9.2.15 -tinnitus. Asymmetrical sensorineural hearing loss. Allergic rhinitis. Dizziness. Difficultly sleeping. Still hears ringing constantly in ears. AR 350.
- 9.15.15 – difficulty with tinnitus, chirping, and hearing loss. These are worse in settings with large groups of people or loud noises. AR 470.
- 1.8.16 – dizziness, sensorineural hearing loss, tinnitus, difficulty speaking. AR 426. Hearing aids helping with hearing loss but still high anxiety of tinnitus especially at night. AR 428.

1

- 12.16.15 – received hearing aids two weeks ago with Dr. Peter's office. He has difficulty adjusting to these. Still trying to adjust settings in different environments (home, while driving, in office buildings) to become acclimated to the devices. AR 448.
- 1.20.16 – difficulty adjusting to his hearing aids. Now that he has returned to wearing them, his attention span is reduced as he feels he is paying too close attention to the sound. He admits that he is limiting himself from environments in which numerous people may be present, such as restaurants or a large store, because he worries how he will cope in such settings. AR 443.
- 2.2.16 – tinnitus, hearing loss. Still hears tinnitus, has a shock wave feeling in head. Not sleeping. AR 423-425.
- 2.2.16 – ongoing problems with severe tinnitus after being injured in a plant. Never really been able to get rid of the tinnitus which is causing severe problems particularly at night when he is trying to sleep. AR 436.

4. Prudential initially approved his claim for benefits and paid benefits for a period.

5. Prudential terminated Mr. Caskey's claim by letter of January 19, 2016 in which it essentially states that his tinnitus, anxiety, and depression are not severe enough to prevent him from performing his previous occupation. AR 1254-1259.

6. A peer review hired by Prudential, Dr. Grossman, opines that Mr. Caskey would have to wear hearing protection around loud noises indefinitely. AR 951-956. Dr. Grossman also states that noise exposure is the cause of his hearing loss. Dr. Grossman explained that Caskey was exposed to loud noises that likely damaged his hearing in his work environment. Id.

7. Caskey appealed the denial of his benefits by letter of July 15, 2016 in which he explained that his hearing problems, which cause depression, anxiety, and the inability to sleep, made it unsafe to perform his job as a shift supervisor for a chemical plant, where loud noises are common and where a mistake on his part could be catastrophic. AR 563-566.

8. Caskey also explained in his appeal that the peer reviewing physicians that Prudential hired to review his claim were clearly biased given their extensive litigation history in

favor of disability benefit denials. AR 565. Caskey submitted a form completed by Dr. Bolter in which he explains that his hearing loss, depression, and anxiety prevent him from returning to work. Dr. Bolter explains that he has "serious problems related to abnormal hearing." AR 569-572.

9. Caskey also submitted his sworn declaration with the appeal noting that his job was very safety sensitive and that he was constantly exposed to loud noises. AR 573-574. He explained that even though he wore earplugs on the job, "the leaks were so loud that ear plugs did not provide enough protection" and that "the plant had high pressure steam emitted from pipes that hurt his ears." AR 573.

10. He further explained that the ringing and chirping in his ears prevents him from getting restful sleep and that it also caused anxiety and depression. He explained that he "<u>cannot wear hearing aids and ear plugs at the same time while working at the plant, as the hearings aids rests in the inside of his ear where the earplugs would have to be placed</u>." Id.

11. Additionally, Caskey submitted literature about the hazards of working in a chemical plant, which explain that such jobs require physical hazards such as "constant loud noise." AR 576; 575-590.

12. Caskey also submitted to Prudential a letter from his girlfriend who explained that Caskey was a hard worker who rarely missed work but who eventually had to take disability leave due to constant ringing and chirping in his ears. AR 568.

13. Caskey's girlfriend explains to Prudential that the hearing loss has caused lack of sleep, anxiety and depression, and that his focus is worse. AR 568.

3

14. Dr. Bolter also explained on August 9, 2016 that he cannot return to work because "he has problems with impaired hearing and sounds that interfere with his thoughts." <u>AR 1035</u>. He further explained in this statement that his problems have not resolved and appear to be intractable. <u>Id</u>.

15. After receiving Caskey's appeal, Prudential overturned the denial of benefits and reinstated such benefits by letter of November 17, 2016. <u>AR 1107</u>.[1]

16. In approving his claim, Prudential explains that it considered his job as a production supervisor, which includes the ability to talk and hear frequently and working in an environment with loud noise levels. <u>AR 1110</u>.

17. Prudential further concludes that the "<u>level of hearing protection Mr. Caskey requires would interfere with his ability to communicate and removing himself from loud noise areas at specific areas at specific intervals throughout the day would be difficult</u>." <u>AR 1110</u>. Prudential concluded that the ear protection required would prevent Caskey from performing the material and substantial duties of his regular occupation. <u>Id</u>.

18. *Just five months after it determined Caskey was disabled from performing his occupation*, by letter of April 21, 2017 Prudential again terminated Caskey's benefits effective April 22, 2017, explaining that upon further review of his claim Prudential now thinks he should be able to perform the duties of his regular occupation. <u>AR 1319-1322</u>. In this new denial letter, Prudential explained that it requested and received new information from his employer explaining that Caskey must wear protective hearing gear, and steel-toed shoes, escape respirator, hard hat, goggles, safety glasses, and hearing protection

---

[1] This was about 11 months after Caskey endured a complete loss of income since Prudential wrongfully terminated his benefits. During this time, Caskey was required to exhaust his 401k to pay for his ongoing medical and living expenses. See **Exhibit A** – Caskey's sworn declaration.

must be worn in high noise areas. His employer further explained that hearing protection is required in high noise areas of 85 decibels or higher and that there are two process areas where the decibel levels can reach 106. Id.

19. Plaintiff again appealed the termination of his benefits by letter of October 18, 2017. AR 1428-1431. In this appeal Caskey explains that nothing has changed in regards to his health and there was nothing in his employer's statement regarding Caskey's job duties that should have changed Prudential's decision just 5 months previously in which it found that his hearing damage would prevent him from performing his job duties as they are normally performed in the national economy. Caskey also submitted literature explaining that hearing damage occurs within the decibel range that his employer stated is typical in Caskey's work environment. Caskey further explained that continuing to work in his profession, which is likely what caused his hearing damage in the first place, puts him at greater risk for further damage to his ears, which is totally unacceptable. Id.

20. Prudential denied his appeal by letter of November 30, 2017, explaining that it was standing behind its decision to terminate benefits past April 21, 2017. AR 1334-1339.

21. The Group Policy states that the governing jurisdiction is Texas. AR 152.

22. Texas's discretionary clause ban applies to all insurance policies "offered, issued, renewed, or delivered on or after February 1, 2011." 28 Tex. Admin. Code § 3.1201.

23. The effective date of the LTD policy is November 1, 2012 as stated in the LTD policy. AR 163, 168.

24. Prudential performed a vocational review on November 14, 2016 that found that his job was performed in an environment with loud noises and that talking and hearing are performed frequently. AR 1360. Prudential's vocational reviewer also stated that the

level of hearing protection that Caskey requires would interfere with his ability to communicate and that removing himself from areas of loud noise at specific intervals throughout the work day would be difficult. Id.

25. Based on this vocational review, and the information Caskey submitted with the appeal, Prudential reversed the denial of his benefits and <u>initially explained that it would be approving such benefits for the duration of the "own occupation" period which expired on April 21, 2017</u>. AR 1362.[2] Indeed, Prudential's claim note states specifically: **"Approve through regular occupation period 4/21/2017 as the need for hearing protection is permanent."** AR 1362.

26. Prudential then started reviewing whether Plaintiff could perform "any occupation" that would meet the policy's earnings threshold.[3] If so, the terms of the policy would allow Prudential to terminate benefits that were set to begin on April 22, 2017. AR 1363.

27. Prudential realized that it would not be able to find alternative occupations that would pay Caskey 80% of his pre-disability earnings considering his education, training, and experience and his hearing damage.

28. On April 17, 2017 (i.e. 5 days before the end of the "own occupation" period), Prudential reached out to Caskey's employer fishing for information to support that Caskey can perform his previous occupation. (despite just recently concluding a lengthy review resulting in the conclusion that he could <u>not</u> in fact perform such an occupation for the duration of the own occupation period). AR 890-891.

---

[2] For the first 24 months, the policy pays benefits so long as the insured is disabled from performing his own occupation. AR 75. After 24 months, the definition of disability changes such that he must be prevented from performing the material duties of any occupation that would provide him with 80% of his pre-disability earnings if he was working or 60% of his earnings if he was not working. AR 75; 98.

[3] Indeed, Prudential's claims note explains that it was beginning a review of "gainful occ[upations] that [Caskey] could perform within" his physical restrictions. AR 1363.

6

29. On April 20, 2017, i.e. the day before the end of the "own occupation" period, Prudential received an email from Plaintiff's former employer's Labor Relations Supervisor in which he answered several questions from Prudential. AR 1384-1385; AR 890-891. The next day on April 21, 2017 Prudential terminated his claim for benefits, claiming that the new information provided by his employer justified terminating benefits effective April 22, 2017.

30. The policy defines "regular occupation" as follows:

   **Regular occupation** means the occupation you are routinely performing when your disability begins. Prudential *will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location*. AR 75. (emphasis added).

31. Prudential vocational consultant determined that his regular occupation is considered to be a production supervisor, which includes the ability to talk and hear frequently and working in an environment with loud noise levels. AR 1110.

32. Prudential further concludes that the "level of hearing protection Mr. Caskey requires would interfere with his ability to communicate and removing himself from loud noise areas at specific areas at specific intervals throughout the day would be difficult." AR 1110; AR1360.

33. As a shift supervisor at a chemical plant, a mistake on Caskey's part could be catastrophic to the chemical plant.

34. Caskey also submitted his sworn declaration with the appeal noting that his job was very safety sensitive and that he was constantly exposed to loud noises. AR 573-574.

35. Caskey explained in his appeal to Prudential that even though he wore earplugs on the job, "the leaks were so loud that ear plugs did not provide enough protection" and that "the plant had high pressure steam emitted from pipes that hurt his ears." AR 573.

36. Caskey further explained that the ringing and chirping in his ears prevents him from getting restful sleep and that it also caused anxiety and depression. He explained that he "cannot wear hearing aids and ear plugs at the same time while working at the plant, as the hearings aids rests in the inside of his ear where the earplugs would have to be placed." Id.

37. Caskey submitted literature to Prudential about the hazards of working in a chemical plant, which explain that such jobs required physical hazards such as "constant loud noise." AR 576; 575-590.

38. Caskey also submitted a letter from his longtime girlfriend who explained that Caskey was a hard worker who rarely missed work but who eventually had to take disability leave due to constant ringing and chirping in his ears. AR 568.

39. Caskey's longtime girlfriend explains that the hearing loss has caused lack of sleep, anxiety and depression, and that his focus is worse. AR 568.

40. Caskey's previous employer explained that the decibel levels in "high noise areas" in the plant can range from 80 DB to 100 DB and that certain other areas can reach 106 DBA. AR 891.

41. Just days before the definition of disability was set to change from "own occupation" to "any occupation," on April 17, 2019 Prudential sent an email to Mr. Caskey's previous employer asking the following questions: (1) Can you clarify what the personal protective equipment is and what SCBA is/stands for?; (2) What is the decibel level on the

production floor?; (3) What protective equipment is standard and made available to employees in this role? Is any other equipment available as needed/requested?; (4) With the use of protective equipment, how do employees typically communicate on the floor? AR 1384-1385.

42. On November 14, 2016, Prudential's vocational consultant stated that Mr. Caskey's occupation requires exposure to noise levels that are classified as loud and that both talking and hearing are frequently required of his occupation. AR 1360.

43. In connection with Caskey's second appeal, Caskey provided literature to Prudential explaining that OSHA notes that exposure to constant loud noises is one of the most prevalent physical hazards of working in a chemical plant. AR 1428-1434.

44. Prudential determined that Mr. Caskey's occupation is consistent with the occupation of Production Supervisor, which requires talking, and hearing frequently and is performed in an environment with loud noise levels. AR 1292.

45. Prudential determined that the level of hearing protection Mr. Caskey requires would interfere with his ability to communicate and removing himself from loud noise areas at specific intervals throughout the work day would be difficult. AR 1292.

Respectfully submitted,

__s/s Reagan Toledano_____
Willeford & Toledano
Reagan L. Toledano (La. 29687)
201 St. Charles Avenue, Suite 4208
New Orleans, Louisiana 70170
(504) 582-1286; (f) (313)692-5927
rtoledano@willefordlaw.com

**CERTIFICATE OF SERVICE**

9

I hereby certify that a copy of this pleading has been served upon counsel of record by electronic filing using the CM/ECF system, which will send notification of this filing to all counsel of record on this October 3, 2019.

                                                  __/s/ Reagan Toledano_____